IN RE MARÍA LUISA RAMOS, JUDGE OF THE DISTRICT COURT OF PUERTO RICO, Respondent.

No. 10.   Decided October 1, 1962.

*Hiram R. Cancio, Secretary of Justice, J. B. Fernández Badillo, Solicitor General, Arturo Estrella, Deputy Solicitor General, José C. Aponte, Manuel J. Vera Mercado, Juan Lorenzo Rodríguez, Gerardo Méndez Correa, Special Prosecuting Attorneys,* and *Manuel López Carrillo, Assistant Prosecuting Attorney,* for petitioner. *Francisco Ponsa Feliú, Jorge Luis Córdova, Héctor Ramos Mimoso, Manuel Martín Maldonado, Jorge Benítez Gautier, Ramón Lloveras, Alvaro R. Calderón, Jr., Benjamín Rodríguez Ramón, Baltasar Corrada del Río, Rodolfo Zequeira, F. Hernández Vargas, R. Rodríguez Ema, Luis E. Dubón, José Otero Suro, Rodrigo Otero Suro,* and *Nicolás Jiménez* for respondent.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In compliance with an order issued on January 9, 1961 by the Chief Justice of this Court, the Secretary of Justice preferred 1447 charges against District Judge María Luisa Ramos charging her with "improper, immoral, reprehensible and negligent conduct"[1] in the exercise of her judicial duties. All the charges preferred, except No. 1447, refer to actions on the part of respondent in interpreting, authorizing, and certifying, as District Judge, a number of petitions for registration of the Christian Action Party for the general elections of 1960.[2]

On September 6, 1961, in the exercise of our discretion, we suspended respondent from office and salary during the pendency of the proceeding.[3]

---

[1] Section 24 of the Judiciary Act, 4 L.P.R.A. § 232, which provides the procedure for the removal of the judges of the Court of First Instance, originally provided as the only causes therefor, immoral conduct or neglect in the exercise of judicial duties. *In re Gallardo,* 81 P.R.R. 18 (1959). By Act No. 107 of July 8, 1960 (Sess. Laws, p. 309), 4 L.P.R.A. (Supp. 1961) p. 220, the phrase "immoral conduct" was changed to "immoral, improper or reprehensible conduct."

[2] For other judicial incidents on the registration process of said party, see *Dávila* v. *Secretary of State,* 83 P.R.R. 180 (1960); *Dávila* v. *Gen'l Supervisor of Elections,* 82 P.R.R. 257 (1960); *C.A.P.* v. *General Supervisor of Elections,* 82 P.R.R. 21 (1960); *C.A.P.* v. *Secretary of State,* 82 P.R.R. 2 (1960).

[3] By Act No. 31 of June 11, 1962 (Sess. Laws, p. 81), the Legislative Assembly transferred the power to order the suspension from employment

On September 26, 1961 we appointed Joaquín Correa Suárez, Superior Judge, as Special Master to hear and receive the evidence presented by the parties and render the corresponding report. After several preliminary incidents which we need not relate here, the hearings were held during a period between March 5 and May 23, 1962. The plaintiff presented oral and documentary evidence; respondent only presented documentary evidence. There were 695 charges submitted on stipulation; evidence was heard on 618; plaintiff withdrew 17 and no evidence was presented as to 117. Thus the Master entertained 1313 charges in relation to which he rendered, last June 13, a lengthy, elaborate and conscientious report containing 58 findings of fact.[4]

We granted to the parties a simultaneous term to present, their objections, if any, to the above-mentioned report. The Secretary of Justice filed a writing stating that he had no objections; and, in view of the fact that respondent did not set forth any objections nor move for an extension, we fixed a common term of 30 days for the filing of briefs. Plaintiff presented his on July 30; respondent did not present it nor move for an extension therefor. At the commencement of our regular term on September 4, the matter was submitted to our consideration.

Broadly speaking the charges preferred against respondent may be classified as follows:

(A) Charges in which the presumptive petitioner or petitioners on the application for registration of the Christian Action Party which was attested by respondent:

---

and salary while the proceeding is pending, from the Supreme Court in full, to the Chief Justice or to the associate justice whom he might designate to investigate and determine cause. *In re Marín*, 81 P.R.R. 267 (1959); *cf. People v. Toro*, 84 P.R.R. 473 (1962).

[4] At the termination of the hearings the Master granted to the parties a simultaneous term of 20 days to present a draft of findings of fact. According to the report, plaintiff complied; respondent did not present any draft nor move for an extension therefor.

1—had died prior to the date they appear signing the petition;[5]

2—appear signing and impressing their fingerprints on the petition, and both things are denied;[6]

3—appear signing the petition, which is denied, without impressing their fingerprints on said ballot;[7]

4—appear signing the petition and impressing their fingerprints, which is denied;[8]

5—are people who know how to read and write and yet appear marking the petition;[9]

6—appear signing the petition and do not know how to read or sign and there are fingerprints impressed on the same;[10]

7—appear signing the petition and do not know how to sign and there are no fingerprints on the same;[11]

8—signed the petition but not before respondent;[12]

9—signed and impressed their fingerprints but not before respondent;[13]

---

[5] Counts 1 to 9.

[6] Counts 10-25, 27-32, 34-97, 99, 101-106, 108-111, 114-123, 125-127, 129-133, 135-137, 141-142, 144-150, 152-156, 159-162, 164, 165, 168-184, 186-197, 199-204, 207, 208, 210-213, 215-236, 238-248, 251-257, 259-270, 272-284, 286-298, 300-315, 317-331, 334-363, 365-366, 369-379, 381-407, 409-413, 415-422, 424-426, 427-458, 460-476, 477-507, 509-522, 524-526, 528-548, 549-553, 555-565, 567-570, 572, 574-575, 577-592, 594-600, 602, 603, 605–634, 636–639, 641, 643–648, 650, 652–656, and 658.

[7] Counts 659 to 686.

[8] Counts 687, 689-690, 692-703, 705, 707, 709-719, 721-729, 732-740, 742–752, and 754.

[9] Counts 755-771.

[10] Counts 772-789, 791-826, 828-836, 838-845, 847-865, 867-870, 872, 874-877, 879-889, 891-896, 898-901, 903-907, 911-913, 915-916, 918-921, 923-927, 929-969, 971-978, 980-1026, 1028-1036, 1038-1047, 1049-1051, 1053–1061, 1063–1066, 1068–1077, and 1080–1091.

[11] Counts 1092, 1094–1097, 1099–1102, and 1104–1111.

[12] Counts 1115-1116, 1118-1122, 1124-1127, 1129-1132, 1134-1143, 1145–1151, 1153–1161, 1164–1169, 1171–1185, 1187–1202, 1204–1210, and 1213-1215.

[13] Counts 1216-1234, 1236-1239, 1241-1247, 1249-1264, 1266-1271, 1273-1291, 1293–1297, 1299–1305, 1307–1318, 1320–1322, 1324, 1326–1331, and 1333.

10—knew respondent but did not sign the petition before her;[14]

11—marked the petition but not before respondent and the ballots have fingerprints;[15]

12—marked the petition but not before respondent and the ballot does not contain any fingerprints;[16]

13—appear signing the petition and deny it, and the number corresponding to the affidavit in the oath certificate was not stated;[17]

14—were not identified before respondent by the subscribing witness whose name is set forth in the petitions.[18]

(B) Charges in which respondent:

15—did not sign two petitions for registration in spite of having stamped the court's seal and having registered the same under the corresponding number in her book of affidavits;[19]

16—did not state the corresponding number of the affidavit in the oath certificate, and furthermore, the applicant did not sign before respondent;[20]

17—in spite of having numbered the affidavits in 18 petitions for registration, did not sign the corresponding entry in the Registry of Affidavits;[21]

18—certified on September 15, 1960, that a number of petitions which do not appear signed by respondent, were signed in her presence.[22]

---

[14] Counts 1334-1336 and 1338.

[15] Counts 1340, 1343, 1345–1348, 1350, 1352–1360, 1363–1367, and 1369–1370.

[16] Count 1372.

[17] Counts 1373-1378.

[18] Counts 1379-1443.

[19] Counts 1112 and 1113.

[20] Count 1339.

[21] Count 1445.

[22] Count 1446.

(C)

19—Count in which respondent is charged with political activities during the inscription process of the Christian Action Party.[23]

(D)

20—Count in which respondent is charged with having refused to testify in an administrative investigation carried out by the Office of Courts Administration.[24]

In her answer on September 25, 1961 respondent expressly admitted the facts of charges Nos. 13, 15, 16, and 20.

1—The Master found proved 1311 charges which comprise the different modalities identified under Nos. 1 to 18. The facts charged and proved constitute departures, in most cases substantial, from the procedure established by § 37 of the Election Law as it prevailed at the time the respective petitions for nominations of candidates were filed. The fourth paragraph of said section, 16 L.P.R.A. § 112, reads as follows:[25]

"Each and every person who signs a petition for the nomination of a candidate for an office shall state that he is a duly registered voter of Puerto Rico and that he is qualified to vote for the candidate or candidates named in the said petition, and the name, age, color, precinct and *barrio* under and in which his registration as a voter appears, and each such petitioner shall sign each such petition in his own handwriting. When the petitioner does not know how, or is unable, to sign, he shall impress the print of both thumbs, if possible, beside the signature of such witness as may sign for said petitioner. Each of said petitions shall be duly sworn to before some judicial officer of Puerto Rico authorized to administer oaths; and each officer before whom a petition nominating a candidate for office is subscribed and sworn to, as authorized by this section, shall state in his certificate of that fact, *that the oath and signature or thumbprint to which said certificate refers, were made in his*

---

[23] Count 1444.

[24] Count 1447.

[25] This section was substantially amended by Act No. 140 of June 30, 1961 (Sess. Laws, p. 304), 16 L.P.R.A. (Supp. 1961) pp. 25–31.

*presence and under his observation;* and there shall be a separate certificate of each oath and signature. The failure of an officer before whom a petition for nomination is signed and sworn to, to make the certificate required by this section, shall render such certificate and petition null and void. It shall not be necessary to file a separate affidavit for each person who signs a petition for his nomination, but each such petition must state clearly the names of the candidates for whose nominations each petitioner petitions and the offices for which he desires to have such persons respectively nominated. These affidavits shall be exempt from the payment of any fees."

Likewise, respondent departed from the prescription of law concerning the writing and signature of affidavits— § 3 of the Act of March 12, 1903 (Sess. Laws, p. 39), 4 L.P.R.A. § 883 and § 3 of the Act of March 12, 1908 (Sess. Laws, p. 39), 4 L.P.R.A. § 889.[26]

On different occasions we have disapproved of the practice of a notary who certifies that several persons subscribed and swore to a document before him without those persons actually being present at the time of signing that document, and without his knowing personally that such were the signatures of the executing parties because it constitutes "an act which destroys the public faith." *In re Piñero*, 77 P.R.R. 596 (1954); *In re Aponte*, 79 P.R.R. 3 (1956); *In re Ardín*, 75 P.R.R. 466 (1953); *In re Cruz Disdier*, 70 P.R.R. 428 (1949); *In re Vergne*, 67 P.R.R. 28 (1947).

■ The seriousness of respondent's acts is evident especially when it is considered that not only is she a person who is acquainted with the law but also in her office as judge she is obliged to see to its strict compliance. It is easy to prove that they were not mere inadvertences or involuntary

---

[26] Act No. 87 of June 20, 1961 (Sess. Laws, p. 166), 4 L.P.R.A. (Supp. 1961) § 892a, added § 6 A to the Act of March 12, 1908, *supra*, for the purposes of requiring the judges of the Court of First Instance and the Peace Judges to forward on Monday of each week, an index of the affidavits or statements authorized by each one of them in the preceding week. See, Journal of Proceedings 1226 (1961).

errors. The great number of instances in which she departed from the law reveal a line of conduct which constitutes open contempt of its provisions. Although it is true that the registration procedure of a political party should not be surrounded by such conditions and requirements which actually preclude the lawful organization of a political party—thus defeating the expression of a group of citizens and thereby attempting against the essence of democracy itself—*Partido Popular* v. *Gallardo*, 56 P.R.R. 677 (1940), we must bear in mind that once these requirements have been established and public faith has been entrusted to the judges for the guarantee of their enforcement, the latter cannot become judges of the reasonableness thereof. The mission of a judge is to see that the law is complied with in the course of the registration procedure unless his intervention is made necessary in a judicial action in which the question of reasonableness is raised.

■ The facts proved thus show that respondent observed improper, reprehensible and highly negligent conduct in the discharge of the duties imposed upon her by law, which is sufficient to decree her definite removal from office.

2.—The conclusion which we have previously reached makes it unnecessary to consider the charges preferred against respondent as to any political activity [27] and her

---

[27] Count No. 1444 concerning political activities of the respondent, charges that while she acted as Judge of the District Court, Bayamón Part, "she campaigned in favor of the registration of a political party...requesting, encouraging and inviting, several citizens to sign petitions for registration... and permitting that posters be put up and loose leaves be circulated in the court in which she acted as Judge, inviting the public to appear before her in the District Court of Puerto Rico, Bayamón Part, to swear petitions for registration for the political party called Christian Action Party. . ."

The Master only found proved that respondent requested in her office at the court, that Inés María Pacheco Martínez and Otoniel Falcón Torres subscribe to the petitions for registration of the above-mentioned party for the general elections of 1960.

See Article V, § 12 of the Constitution of the Commonwealth of Puerto Rico; Canon XVIII of Judicial Ethics, 4 L.P.R.A. App. IV (Supp. 1961) p. 327.

refusal to testify during an administrative investigation,[28] as well as the objections set forth during the hearing, since the result would not be altered.

Respondent María Luisa Ramos will be separated from her office as District Judge from the date of our order suspending her from office and pay.

Mr. Justice Ramírez Bages concurs in the result and states that he does not deem it necessary to make any pronouncement in this proceeding as to the reasonableness of the requirements and conditions prescribed by the Legislative Assembly for the registration of political parties.

Mr. Chief Justice Negrón Fernández and Mr. Justice Dávila did not take part.

---

[28] See, *Cohen* v. *Hurley*, 366 U.S. 117 (1961); *Re Anastaplo*, 366 U.S. 82 (1961), and *Koningsberg* v. *State Bar of California*, 366 U.S. 36 (1961); Comments 47 Iowa L. Rev. 507 (1962); 37 Notre Dame Law. 246 (1961); 75 Harv. L. Rev. 129 (1961); 36 N.Y.U.L. Rev. 246 (1961); 8 U.C.L.A. L. Rev. 448 (1961); 13 Stan. L. Rev. 141 (1960); 39 Texas L. Rev. 233 (1960); 12 Syr. L. Rev. 101 (1960); 60 Col. L. Rev. 885 (1960); 20 La. L. Rev. 743 (1960).